UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| LONE STAR AIR PARTNERS, LLC<br><br>                       Appellant,<br><br>v.<br><br>DELTA AIR LINES, INC., and<br>THE POST-EFFECTIVE DATE<br>COMMITTEE OF DELTA AIR<br>LINES, INC.<br>                       Appellees. | Case No. 07-CV-11143 (SAS)<br><br>Chapter 11 Case No.<br>05-17923 (ASH)<br><br>(Jointly Administered) |

## APPELLANT'S REPLY BRIEF

 

KAYE SCHOLER LLP
Richard G. Smolev (RS 2222)
Piper A. Brock (PB 6335)
425 Park Avenue
New York, New York 10022
(212) 836-8000 (telephone)
(212) 836-8689 (facsimile)

*Counsel for Appellant*
*Lone Star Air Partners LLC*

As with all airlines forced into chapter 11 by the economic environment in which they conduct business, Delta used the reorganization process to reduce its costs of operation, both by negotiating new labor costs and rules and by renegotiating its equipment costs. A large part of the equipment savings was realized through a single negotiation with a large group of lenders known as the "Bingham Group."

As Lone Star noted at pages 10 and 11 of its opening brief, Delta took the position in the Bankruptcy Court that when the Indenture Trustees for the debtholders who were members of the Bingham Group entered into the term sheet that memorialized their understanding, that step amounted to an exercise of remedies under the leases in which they had an interest. As noted in footnote 3 of Lone Star's opening brief, the Bankruptcy Court agreed with this position.

Appellees Delta and the Post-Effective Date Committee (the "Committee") moved away from that position in their brief. Without even addressing the position Delta took in the lower court, they now argue that the only proper construction of the phrase "exercise of a remedy" in the Lone Star TIAs must be a consummated foreclosure. They even inserted the word "sale" in the caption of Section II of their brief (*No Sale Remedy Was Exercised . . .*), presumably to suggest that the exercise of the remedy referred to in the tax indemnity agreement means the sale of the aircraft.

Lone Star respectfully suggests that, as Delta argued below, entry into the Bingham Term Sheet represented an exercise of a remedy by the Indenture Trustee under the Lone Star leases, leaving the only question whether Lone Star's sale of its owner participant interest in the middle of a foreclosure (as opposed to a vague concern that remedies would be enforced somewhere down the road) was "attributable to" that exercise of a remedy. Plainly, the parties differ on how

far along on the continuum of the exercise of a remedy the sale of an owner participant's interest must take place so as to fall within the exception to the cited exclusion.

In the view of Delta and the Committee, the owner participant receives a tax indemnity claim only when its interest is wrested from its hands, through a completed foreclosure. They cite one dictionary definition of the phrase "attributable to" at page 13 of their brief (*i.e.*, meaning owing to, or produced by), argue that this is the only possible meaning and then suggest that any meaning other than the one that they put forward might "strain the contract language beyond its reasonable and ordinary meaning." Appellees' Brief, at 22.

In reality, though, the definition cited by Delta and the Committee is not terribly different from the definition cited by Lone Star at page 18 of its opening brief (*i.e.*, to explain by indicating a cause). Both definitions speak in terms of a causal link between the action of the party enforcing the Lease (*i.e.*, the exercise of a remedy) and the sale of the owner participant interest. A contract is ambiguous when it is reasonably susceptible to more than one reading or one as to which reasonable minds could differ. *Allianz Ins. Co. v. Lener,* 416 F.3d 109, 113 (2d Cir. 2005); *see also UBS Sec. LLC v. Finish Line, Inc.,* No. 07-10382, slip op. at 12 (S.D.N.Y. Feb. 22, 2008). The Bankruptcy Court should not have imposed its own interpretation as a substitute for hearing extrinsic evidence to ascertain the intent of the parties. *See Scholastic, Inc. v. Harris,* 259 F.3d 73, 82 (2d Cir. 2001).

At page 16 of their brief, Delta and the Committee point to language used by a different owner participant in an unrelated transaction to support the argument that "parties knew how to negotiate more limited exceptions to the TIAs when that is what they intended." Lone Star just as easily could have referenced tax indemnity agreements from unrelated transactions where the

3

triggering language of a comparable exclusion in fact was "pursuant to" the exercise of remedies to show how parties in other transactions knew how to draft tighter exclusions.

In reality, though, neither party needs to stray from the operative documents of the Lone Star transactions, for Section 7(b)(H) of the Lone Star Lease shows that Delta and Lone Star knew how to create a direct causal link when that was their intent. That section, which relates to permitted transfers of the Aircraft says, in relevant part, that Delta could "transfer or permit the transfer of possession of the Airframe or any Engine . . . *pursuant to a sublease* . . . ." (emphasis supplied). Plainly, when Delta wanted a direct causal link between the negotiated triggering action (*i.e.*, the right to transfer possession) and the means by which that action was carried out (*i.e.*, a sublease) it drafted that link with the specificity of the phrase "pursuant to."

If Delta had wanted the exception to the transfer exclusion in the tax indemnity agreement to be triggered only when the owner participant's transfer of its interest was directly caused by the consummation of a sale of the Aircraft as opposed to the exercise of any one of the remedies available in a Lease default scenario, it would have used the same wording that it did in Section 7(b)(H) of the Lease to tie the exclusion to the sale of the Aircraft and not the phrase "attributable to" the exercise of any remedy available under the Lease.

It was error for the Bankruptcy Court to fail to recognize the distinction in the words that the parties used to express the various aspects of their agreement because under New York law, all of the interrelated contracts involved in a single transaction such as a leveraged aircraft lease must be interpreted as a whole, consistent with the purpose of the transaction. *This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) ("Under New York law, all writings forming part of a single transaction are to be read together.").

Selecting between competing (or, as noted, not particularly competing) dictionary definitions, is not how the Bankruptcy Court should have determined the meaning of the phrase "attributable to" in the Lone Star tax indemnity agreements, for the Second Circuit has held that "Dictionary definitions are not determinative of the meaning of [disputed contract terms.]" *See Alexander & Alexander Services, Inc. v. Lloyd's*, 136 F.3d 82, 87 (2d Cir. 1998). In other words, the fact that the meaning of a term may seem obvious or intuitive is not dispositive in the analysis of whether its meaning *within the contract* is ambiguous.

Courts frequently underscore the fact that contract interpretation requires more than ascribing the "plain" meaning of words to the contract terms at issue. Examples abound of courts admitting parol evidence in order to clear up an ambiguity they perceived in contract terms with seemingly obvious and indisputable meanings. *See, e.g., Garza v. Marine Trans. Lines Inc.*, 861 F.2d 23, 28 (2d Cir. 1988) (finding ambiguity in the term "loss or damage"); *see also Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 45 (2d Cir. 2006) (finding ambiguity in the term "contamination"); *UBS Sec. LLC v. Finish Line, Inc.*, No. 07-10382, slip op. at 12 (S.D.N.Y. Feb. 22, 2008) (finding ambiguity in the terms "material and adverse" and "reasonable discretion"); *Alexander & Alexander Services, Inc.*, 136 F.3d at 87 (finding ambiguity in the term "client"); *G. Golden Associates of Oceanside, Inc. v. Arnold Foods Co., Inc.*, 870 F.Supp. 472, 479 (E.D.N.Y. 1994) (finding ambiguity in the term "products"); *LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, 116 B.R. 887, 903 (Bankr. S.D.N.Y. 1990) (finding ambiguity in the term "terminated"); *Thorington v. Smith*, 75 U.S. 1, 12-14 (1868) (finding ambiguity in the term "dollars"); *DeWitt v. Kaiser*, 484 A.2d 121, 126 (Pa. Super. Ct. 1984) (finding ambiguity in the term "income"); *Daset Mining Corp. v. Indus. Fuels Corp.*, 473 A.2d 584, 587-94 (Pa. Super. Ct. 1984) (court defines "recoverable

bituminous coal"). Thus, "where the text of an agreement reasonably allows for varying interpretations-whether by the inadvertence or design of the draftsman-the need for judicial construction cannot, and may not, be avoided. *Wards Co., Inc. v. Stamford Ridgeway Associates*, 761 F.2d 117, 120 (2d Cir. 1985).

Particularly where Delta and Lone Star used "pursuant to" in certain contexts and "attributable to" in another place in their integrated agreements, the foregoing authority strongly suggests that the Bankruptcy Court should not have assumed that those phrases had the same meaning without taking evidence from the parties themselves.

*[remainder of page intentionally left blank]*

## CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court should be reversed or, in the alternative, remanded for further proceedings.

Dated: New York, New York
      February 28, 2008

KAYE SCHOLER LLP

_____
Richard G. Smolev (RS 2222)
Piper A. Brock (PB 6335)
425 Park Avenue
New York, New York 10022
(212) 836-8000 (telephone)
(212) 836-8689 (facsimile)

*Counsel for Appellant*
*Lone Star Air Partners LLC*